(No. 12695.—Decree affirmed.)
JOHN M. MITCHELL, Appellant, *vs.* FRANK O. LOWDEN, Governor, *et al.* Appellees.

*Opinion filed June 18, 1919.*

1. CONSTITUTIONAL LAW—*publication of statute creating a debt may be provided for in act itself.* Under section 18 of article 4 of the constitution, requiring the publication of a statute creating a debt before the act is submitted to the vote of the people, a separate act is not necessary to confer authority for the publication, but the legislature may provide therefor by separate resolution or vote or by a provision in the act itself.

2. SAME—*constitution must be construed with reference to its object.* A constitutional provision must be construed, like a statute, with reference to the object to be accomplished, and when the real purpose is apparent but the words, followed literally, lead to an absurd consequence, there is sufficient reason to depart from the language.

3. SAME—*what vote of the people is required to adopt a statute creating a debt.* Under section 18 of article 4 of the constitution an affirmative vote by a majority of the voters at an election for members of the General Assembly is required for the adoption of a statute imposing an indebtedness upon the State, and a majority of the votes cast for members of the General Assembly, which, owing to our system of minority representation, would be literally a majority of three times the number of voters, is not required.

4. SAME—*creation of a debt and levy of tax to pay interest may be included in one act.* Under section 18 of article 4 of the constitution, requiring that a law authorizing the contracting of a debt shall be submitted to the people with a law levying a tax to pay the interest on the debt, the provision for the payment of the interest may be included in the act creating the debt, and two separate acts are not required.

5. SAME—*provisions creating debt and levying tax to pay interest need not be voted on separately by legislature.* Where a law is passed imposing a liability upon the State, section 18 of article 4 of the constitution requires that the legislature provide for the levy of a tax to pay the interest on the debt; but where the provision for the levy of the tax is included in the act creating the debt, section 12 of article 4 of the constitution does not require that each of the provisions be voted on separately by the legislature. (*People* v. *McBride,* 234 Ill. 146, followed.)

6. SAME—*provisions necessary to carry out purpose of act need not be expressed in title.* The object of the constitutional restriction that an act shall not include subjects not expressed in the title is to prevent the inclusion in the act of provisions foreign to the subject of legislation and which have no legitimate tendency to accomplish the purpose of the act as expressed in the title, but provisions, however diverse, which tend to make effectual the purpose so expressed may be included in the act though not expressed in the title.

7. SAME—*act of 1917 for State-wide system of hard roads does not impose burdens on owners of motor vehicles.* The act of 1917 for a State-wide system of hard roads, in providing that the interest on the bonded indebtedness shall be paid out of the road fund created by section 19 of the Motor Vehicle act, does not impose any burdens on the owners of motor vehicles or grant any immunities to other property owners, as the act does not in any way affect the amount, time or manner of the payment of the fee for the registration of motor vehicles, as required by the Motor Vehicle act.

8. SAME—*act of 1917 for State-wide system of hard roads does not assume debts of counties.* Section 10 of the act of 1917 for a State-wide system of hard roads, providing that use may be made of such roads already constructed by counties, and that in such case an amount of money equal to the share of the actual cost of such road paid by the county shall be allotted to the county, merely provides for the payment by the State of the cost of a road of which it takes control as a part of the State-wide system, and the State assumes no debt of the county but pays in cash for what it purchases.

9. SAME—*in specifying objects of appropriation various items of expense need not be stated.* Where money is appropriated for the single purpose of constructing a State-wide system of hard roads, the constitution does not require an itemization, in detail, of every expenditure and of every contract required in the construction of the various roads contemplated in the system for which the appropriation is made.

10. SAME—*legislature has absolute control over public highways.* Subject to constitutional limitation the control of the legislature over the public highways is absolute, and the legislature may give jurisdiction over the highways to such authorities as it may see fit and change the control of them at pleasure.

11. SAME—*act of 1917 for State-wide system of hard roads is not local.* While the act of 1917 for a State-wide system of hard roads does not include all the highways in the State, it provides a system of highways affording reasonable connection with one

another and with the different communities and principal cities of the State and is not a local or special law. (*Martens* v. *Brady,* 264 Ill. 178, followed.)

12. SAME—*the act of 1917 for State-wide system of hard roads does not delegate legislative or judicial power to department of public works.* The act of 1917 authorizing the construction of a State-wide system of hard roads under the supervision of the department of public works and buildings does not delegate either legislative or judicial power to that department but the questions which are left for determination in the supervision of the work are ministerial.

13. SAME—*what is legislative power and what is judicial power.* Legislative power is the power to enact laws or declare what the law shall be, while judicial power adjudicates upon the rights of citizens and to that end construes and applies the law.

APPEAL from the Circuit Court of Sangamon county; the Hon. ELBERT S. SMITH, Judge, presiding.

GREEN & RISLEY, for appellant.

EDWARD J. BRUNDAGE, Attorney General, ALBERT D. RODENBERG, EDWARD C. FITCH, NOAH C. BAINUM, and ARTHUR R. HALL, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The Fiftieth General Assembly passed an act entitled "An act in relation to the construction by the State of Illinois of a State-wide system of durable hard-surfaced roads upon public highways of the State and the provision of means for the payment of the cost thereof by an issue of bonds of the State of Illinois." (Laws of 1917, p. 696.) By this statute it was enacted that a State-wide system of durable, hard-surfaced roads be constructed by the State upon its public highways, and that for the purpose of providing means for the payment of the cost of such construction, the State, through its officers, be authorized to issue, sell and provide for the retirement of bonds to the amount of sixty million dollars. The sum of sixty million dollars,

to be derived from the sale of bonds, was appropriated to the department of public works and buildings, and the act provided for the levy of an annual tax of an amount sufficient to pay the interest as it should accrue and the principal of the bonds at maturity, provided that no tax should be levied in any year in which a sufficient amount had been appropriated from other sources of revenue to pay the interest and principal of the bonds falling due that year. The construction of the State-wide system of roads was placed under the general supervision and control of the department of public works and buildings, which was authorized to cause the roads to be constructed at the earliest possible time consistent with good business management. It was declared that the general location of the routes upon which the proposed roads were to be constructed should be substantially as described in section 9, so as to connect with each other the different communities and principal cities of the State, provided that the department of public works and buildings should have the right to make such minor changes in the location of the routes as might become necessary in order to carry out the provisions of the act. Section 9 described the general location of forty-six routes by naming the termini of each, giving the general direction of the road from one terminus to the other, and stating that such route afforded certain named places and the intervening communities reasonable connections with each other, covering the State with a net-work of roads reaching every county in the State. On February 19, 1919, John M. Mitchell, a citizen and tax-payer residing in Wabash county, filed a bill in the circuit court of Sangamon county against the Governor, Secretary of State, Auditor of Public Accounts, State Treasurer, Director of Public Works and Buildings, and other officers of that department, the purpose of which was to have the act declared unconstitutional and the defendants enjoined from enforcing it. Objections were alleged to the manner of its adoption, to its title and to its

contents. The defendants answered, a replication was filed, the cause was heard upon the pleadings and evidence, and the court found the issues for the defendants and entered a decree dismissing the bill for want of equity, from which the complainant has appealed.

The cause was submitted at the April term, and an early decision being desired on account of the public interest involved, a judgment was rendered at that term affirming the decree of the circuit court for the reasons now to be stated.

The objections made to the adoption of the act were, that it was not constitutionally submitted to the people as required by section 18 of article 4 of the constitution, and did not receive the majority of votes as required by that section.

Before the debt of sixty million dollars created by this act could be contracted, section 18 of article 4 of the constitution required that the law authorizing it should have been submitted to the people at a general election and have received a majority of the votes cast for members of the General Assembly at such election; that the General Assembly should provide for the publication of the law for three months, at least, before the vote of the people should be taken upon the same; that provision should be made at the time for the payment of the interest, annually, as it should accrue, by a tax levied for the purpose or from other sources of revenue, and that the law levying the tax should be submitted to the people with the law authorizing the debt to be contracted. The act itself provided that before it should go into full force and effect it should, at the general election in November, 1918, be submitted to the people and receive a majority of the votes cast for members of the General Assembly at that election, and it directed that the Secretary of State should cause publication of the act to be made once each week for three months, at least, before the vote of the people should be taken upon the act, in at least two daily newspapers,—one published in Springfield

and one in Chicago. The act was published in all respects in accordance with this direction and the law was submitted to the people and voted on at the election in accordance with the terms of the act. The canvass of the vote by the State canvassing board showed the whole number of votes cast at the election was 975,545, the whole number of votes cast for members of the General Assembly was 898,821, the whole number of votes cast for the act was 661,815 and the whole number against the act was 154,296, and that the majority in favor of the act was 212,404. The appellant insists that the finding by the State canvassing board of this majority in favor of the act is erroneous, for the reason that the canvassing board had regard to the number of voters (898,821) who voted for members ·of the General Assembly instead of the number of votes cast by such voters for members of the General Assembly, which number of votes was three times the number of voters, and that by a proper construction of the law the majority of the votes cast at the election for members of the General Assembly was not cast for the act.

The objection to the submission of the act is based upon the requirement of the constitution that "the General Assembly shall provide for the publication of said law for three months at least before the vote of the people shall be taken upon the same," and the argument is that only by the enactment of a statute can the General Assembly cause publication of the law to be made. There is no basis for this argument. The General Assembly may provide in the act itself, by separate resolution or by an independent law, for the publication. The object of the publication is to give notice to the people that they may have an opportunity to express their will by their votes. While the publication, if not authorized by the General Assembly, is of no validity, a statute is not necessary to confer authority. A vote directing it is sufficient. The statute which was enacted by the legislature was really a law submitting to the people a

proposition to be voted upon at the general election for a law on the subject of State roads, to become effective upon an affirmative vote by the people. The law submitting the proposition became effective on July 1 and bound every-one to comply with its provision to submit the proposal to a vote, and the Secretary of State was bound to publish the law.

It is seriously contended, however, that the votes cast for members of the General Assembly were three times the number taken by the State canvassing board as the basis of its finding,—that is, 2,696,463 instead of 898,821. The latter is the number of voters who cast votes for members of the General Assembly, and while the votes cast in favor of the law numbered nearly three-fourths of all the voters, it is argued that the language of the constitution, and the law itself, is not obscure or uncertain but is definite and unambiguous and leaves no room for construction; that the total number of votes cast for members of the General As-sembly was 2,696,463; that nothing less than 1,348,232 is a majority of that number, and that less than half that number of votes were cast in favor of the law. This is lit-erally true, but it is perfectly clear that it is not the mean-ing of the constitution that the law did not, therefore, re-ceive a constitutional majority, for such meaning involves the absurdity of holding that the framers of that instru-ment, and the people in adopting it, intended to prohibit the creation of a debt, with the exception specified in sec-tion 18, unless the proposition for its creation should re-ceive at an election a greater vote than all the electors were entitled to cast. It is conceivable that they might have de-sired to prohibit the creation of a debt, but not that they would take this indirect method of prohibiting while ap-pearing to permit. A constitutional provision must be con-strued like a statute with reference to the object to be accomplished, and when the real purpose is apparent the language must be construed so as to carry the purpose into

effect. It is not to be presumed that a provision was inserted in a constitution or statute without reason or that a result was intended inconsistent with the judgment of men of common sense guided by reason. Not the letter of the law, only,—its mere words,—but its spirit and object, must be taken into consideration, and when a particular intent to effect a specific purpose is manifest respect must be paid to that intent. When the words of a statute, followed literally, lead to an absurd consequence there is sufficient reason to depart from the language. (*Perry County* v. *Jefferson County,* 94 Ill. 214.) The intention of section 18 of article 4 of the constitution was to restrict the General Assembly in imposing an indebtedness upon the State to cases where a majority of the voters at an election for members of the General Assembly should vote in favor of the act incurring the liability, and that is the construction which we give to its language.

Section 18 of article 4 requires that where a law authorizing the contracting of a debt shall be submitted to the people, provision shall be made at the time for the payment of the interest, annually, as it shall accrue, by a tax levied for the purpose or from other sources of revenue, and that the law levying the tax shall be submitted to the people with the law authorizing the debt to be contracted. It is argued that this requires two separate acts: one authorizing the debt, the other levying the tax. There is no basis for this argument. Since provision for the payment of interest must be made at the same time as provision for incurring the debt, the natural way would be to include both in one act; but whether contained in one act or not, the constitution requires all to be submitted to the people at the same time.

In connection with this last objection, and based upon the proposition that section 18 requires two acts,—one for incurring the debt, the other for levying the tax to pay the interest,—the argument is made that the statute violates

section 12 of article 4 of the constitution, which requires a yea and nay vote upon each bill separately upon the final passage. This section does not require a separate vote upon each section or provision of the bill. The bill may contain many provisions creating new rights and duties and so establishing new laws applicable to the conditions which are the subject of the enactment, but it is not necessary that each of these provisions be voted upon separately. For instance, section 4 of the Local Option law creates the crimes of forgery and perjury which may be committed in connection with the filing and verification of the petition for a vote, but the fact that a law for the creation of anti-saloon territory and a law creating a new criminal offense of forgery or perjury were included in the single enactment did not invalidate the act. *People* v. *McBride,* 234 Ill. 146.

The appellant contends that even if the act was constitutionally submitted and approved, its terms violate several provisions of the constitution. One of them is section 13 of article 4, in regard to the title which is set out in the beginning of this opinion. It is insisted that the act contracts a debt on behalf of the State, levies a tax for the payment of bonds, appropriates money from the State treasury, from the road fund created by the Motor Vehicle law and from other sources of revenue, and provides for making compensation to certain counties of the State, and that none of these subjects are expressed in the title. The title of an act is not intended to be an index of its contents. The object of the constitutional restriction is to prevent the inclusion in an act of provisions foreign to the subject of legislation, which have no legitimate tendency to accomplish the purpose of the act as expressed in the title. Provisions, however diverse, which tend to make effectual the purpose so expressed may be included in the act though not expressed in the title. *People* v. *McBride, supra.*

The main purpose of the act in question is the construction of a State-wide system of durable, hard-surfaced roads.

Incidental to that purpose, and necessarily connected with its accomplishment, is the means of payment, which the act provides, in accordance with its title, shall be by an issue of bonds by the State. The money arising from the sale of bonds must be paid into the State treasury, and under section 17 of article 4 of the constitution can only be drawn from the treasury in pursuance of an appropriation made by law. Before bonds can be sold it is necessary to make provision for their payment, and this can be done only by the levy of a tax for that purpose or from some other source of revenue. Therefore, in order to accomplish the purpose of the act and the construction of the roads to which it refers, it was proper, if not necessary, to include in it the appropriation of money, the issue of bonds and the levy of a tax for their payment. The act makes no appropriation of the road fund created by the Motor Vehicle law. Section 19 of that law directs that the fund shall, if and when the State shall incur any bonded indebtedness for the construction of permanent highways, be set aside and used for the purpose of paying and discharging, annually, the principal and interest on such bonded indebtedness then due and payable and for no other purpose. The act under consideration, in providing for the payment of the principal and interest of the bonds by a tax levied for the purpose or from other sources of revenue, as required by the constitution, has provided that the moneys in the road fund created by section 19 of the Motor Vehicle law shall first be appropriated to the payment of the principal and interest of the bonds, and only in case of a deficiency of that fund to pay the interest and bonds shall any tax be levied for that purpose in any year. The only means provided in the act for the payment of the cost of the roads is that mentioned in the title,—an issue of bonds,—to which is incidental the levy of a tax for the payment of them in case the funds already provided for that purpose prove insufficient.

The claim that the act violates section 2 of article 2 of the constitution by imposing upon the owners of motor vehicles and their property burdens not imposed upon the owners of other kinds of property, and in so doing also grants an immunity to owners of all other kinds of property, in violation of section 14 of article 2, fails, for the reason that the act neither imposes such burden nor grants any immunity. For the same reason the argument also fails that the act imposes upon the owners of motor vehicles the entire cost of the roads, and so violates section 1 of article 9 of the constitution, which requires the General Assembly to provide such revenue as may be needful by levying a tax by valuations, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. The Motor Vehicle law provides for the registration of motor vehicles and requires every owner of a motor vehicle to pay a fee to the State, annually, but the amount, time and manner of such payment are in no way affected by the act now under consideration.

Section 10 of the act provides that the department of public works and buildings may make use, in the construction of the roads, of any paved road of a proper, durable, hard-surfaced type which may have been constructed by any county and the State, or by the county alone and accepted by the State, and in such case an amount of money equal to the share of the actual cost of such paved road paid by the county shall be allotted to the county, to be used, at the option of the county, either in the payment of any bonds issued by the county and used to improve its State-aid roads, or in the improvement of its State-aid roads by the construction thereon of a durable, hard-surfaced road under the direction and to the satisfaction of the department of public works and buildings. The objection is made that this section is an assumption of the debts of the counties whose roads are so used and discharges their inhabitants from their proportionate share of the State taxes, and so

violates section 20 of article 4 and section 6 of article 9 of the constitution. Section 10 merely provides for the payment by the State of the cost of a road of which it takes control as a part of the State-wide system. The State assumes no debt but pays in cash for what it purchases, and the county may use the money to construct or improve its other roads, or, at its option, in the payment of its bonds issued to improve its State-aid roads. The taxes of the inhabitants of the county for the construction of a State-wide system of roads will not be affected in any way. The county will merely be paid for the cost it has paid for the road taken.

The appellant contends that the appropriation of sixty million dollars, to be derived from the sale of the bonds, violates section 16 of article 5 of the constitution, because it fails to specify the objects and purposes for which the appropriation is made, appropriating to such objects and purposes, respectively, their several amounts in distinct items and sections. The appellant does not indicate the several objects and purposes for which the several amounts should be appropriated in distinct items and sections. The act requires all contracts for construction to be let to the lowest responsible bidder. It authorizes the department of public works and buildings to purchase and supply any labor, tools, machinery, supplies and material needed for the work, to make all final decisions affecting the work and all regulations it may deem necessary for the proper management and conduct of the work and for carrying out all the provisions of the act to the best interest and advantage of the people of the State. The single purpose for which the money appropriated is to be used is the construction of the system of roads. There will, perhaps, be many contracts for the construction of parts of the roads, but each contract is not an item which can be separately stated and for which a definite amount can be appropriated. There will, perhaps, be many contracts for the purchase of ma-

terial and tools, but each contract of purchase is not an item which can be separately stated and for which a definite amount can be appropriated. Nor is the purchase of all of one kind of material such an item. All are items of the aggregate, but the constitution does not require an itemization, in minute detail, of every expenditure of money in connection with the general purpose for which an appropriation is made. The legislature could not know at the time of making the appropriation, even approximately, the amount required for each of the various contracts or purchases. A similar objection was made to three acts appropriating sums of money in gross for "building and maintaining State-aid roads," in *Martens* v. *Brady,* 264 Ill. 178, and was held invalid. The original section 16 of article 5 made no special reference to appropriations. So much of the section as now refers to bills making appropriations of money was adopted as an amendment in 1884. At the next session after the adoption of this amendment the legislature made an appropriation of $200,000 for the purchase of a site and constructing buildings thereon for the soldiers' and sailors' home and for fitting the same for occupancy, without separating the amount into items. (Laws of 1885, p. 16.) The same legislature made a similar appropriation of $73,000 for the construction and completion of the main building of the Eastern Illinois Hospital for the Insane, (Laws of 1885, p. 13,) and numerous other like appropriations. It has been the customary, if not the uniform, method of making appropriations for the construction of buildings and other public works, and the Supreme Court building was constructed and the Centennial Memorial building is in process of construction by means of appropriations so made. (Laws of 1895, p. 76; Laws of 1907, p. 74; Laws of 1917, p. 66.) This legislative construction, while not obligatory upon the court, is entitled to consideration and we regard it as according with the constitution.

The contention is made that the act violates the prohibition of section 22 of article 4 of the constitution against local or special laws for laying out, opening, altering and working roads or highways, and that it delegates legislative and judicial powers to the department of public works and buildings, in violation of article 3. Subject to constitutional limitation the control of the legislature over the public highways is absolute, and it may give jurisdiction over them to such authorities as it may see fit and change the control of them at pleasure. (*Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9; *Illinois Malleable Iron Co.* v. *Lincoln Park Comrs.* 263 id. 446.) By general laws it has delegated to municipal authorities of cities and villages, to park commissioners, to the commissioners of highways of towns and counties, as governmental agencies, certain authority and control over highways. By the present act it changes this authority and control, so far as the highways coming within its terms are concerned, and brings them under the authority and control of another governmental agency,—the department of public works and buildings. The act is not local, for, while it does not include all the highways in the State, it does provide a system of highways affording reasonable connection with one another to practically all parts of the State. The basis upon which the location of the routes established by the act was made is declared to be the connection with each other of the different communities and the principal cities of the State. It is not argued, and cannot well be after a consideration of the routes established, that this basis has been disregarded. A substantially similar basis of classification of roads was held reasonable in *Martens* v. *Brady, supra,* and it was also held that the objection that the statute was local because only a part of the roads in the State would be brought under its provisions was untenable.

There is no delegation of either legislative or judicial power to the department of public works and buildings.

It is true that many questions,—the material to be used, the width of the roadways, the character of the construction and the plans and specifications therefor, the terms and conditions of contracts, the acceptance or rejection of work done, and the numberless details in carrying out the provisions of the act,—are left to the determination of the department of public works and buildings, which is authorized and required to make all final decisions. The decision of such questions is ministerial. Legislative power is the power to enact laws or declare what the law shall be. (*People* v.· *Roth*, 249 Ill. 532.) Judicial power is the power which adjudicates upon the rights of citizens and to that end construes and applies the law. (*Owners of Lands* v. *People*, 113 Ill. 296.) Assessors and boards of review in valuing property for taxation, clerks of courts and sheriffs in taking and approving bonds, city councils in granting or revoking licenses to keep dram-shops, superintendents of schools in granting or revoking teachers' certificates, boards of examiners in granting and revoking licenses to practice medicine or pharmacy, fish commissioners in granting permits to take fish for propagation at times and by means otherwise prohibited, all exercise discretion and judgment in the performance of their duties, but they do not, while executing the law under which they act, make or declare, construe or apply any law, and the acts which, respectively, confer upon them the powers which they exercise do not delegate either legislative or judicial power. (*People* v. *Roth, supra; People* v. *Apfelbaum*, 251 Ill. 18.) The selection of the public highways to be affected is not left to the arbitrary discretion of the department, as the appellant's bill avers. It is true, as the bill alleges, that the act fixes the routes upon which the roads are to be constructed, in a general way, by naming the termini, which are in some cases hundreds of miles apart, with no direct public highway leading from one to the other and with many public highways intervening, and the power is delegated to the de-

partment of public works and buildings to determine the exact public highways between the termini upon which the roads shall be constructed. The determination is not, however, left to an arbitrary discretion. While the termini are the only points fixed by the statute, the roads are to be constructed between the termini substantially upon the routes described, so as to connect with each other the different communities and principal cities of the State, and so as to afford the different places named and the intervening communities reasonable connection with the termini and with each other.

We are of the opinion that the act is not subject to the constitutional objections made to it, and the decree of the circuit court is affirmed.

*Decree affirmed.*