TOWNSHIP OF ELBA *v.* COUNTY OF GRATIOT.

1. STATUTES—ENACTMENT AT SPECIAL SESSION—GOVERNOR'S MESSAGE.

Amendment of section of statute imposing a weight tax on motor vehicles reducing same from 55 to 35 cents per hundred pounds of weight *held*, in full accord with provision of the governor's special message to special session of legislature at which amendatory act was enacted (Const. 1908, art. 5, § 22; Act No. 7, Pub. Acts 1934 [1st Ex. Sess.], amending 1 Comp. Laws 1929, § 4638).

2. APPEAL AND ERROR—CONSTITUTIONAL LAW—ENACTMENT OF STATUTES—SPECIAL SESSION—QUESTIONS REVIEWABLE.

Question as to constitutionality of acts amending gasoline and motor vehicle weight tax acts is not decided, although decision on appeal is made on assumption both amendatory acts, en-

acted at a special session of the legislature, are unconstitutional on the ground that newly-enacted provisions therein contained were not within or germane to the governor's call or his special message, where plaintiff also sought relief under provisions relative to funds for payment of general highway township bonds, contained in a previous amendment of the gasoline tax act, enacted at a regular session (Const. 1908, art. 5, § 22; 1 Comp. Laws 1929, § 3594, as amended by Acts Nos. 81, 107, Pub. Acts 1933, and Act No. 8, Pub. Acts 1934 [1st Ex. Sess.]; §§ 4638, 4651, as amended by Act No. 7, Pub. Acts 1934 [1st Ex. Sess.]).

3. EVIDENCE—JUDICIAL NOTICE—TOWNSHIP HIGHWAYS.

It is a matter of common knowledge that at time act incorporating township highways into county road system was enacted many townships had made little or no advancement in constructing or improving roads while others had improved roads to an extent that necessitated borrowing funds with which to pay the cost (Act No. 130, Pub. Acts 1931, as amended).

4. CONSTITUTIONAL LAW—STATUTES—APPROPRIATIONS FROM GASOLINE AND WEIGHT TAXES FOR GENERAL HIGHWAY TOWNSHIP BONDS.

Provision of statutes making appropriations from gasoline and motor vehicle weight tax funds "to reduce the tax levied for general highway township bonds where such bonds were issued for roads that are now county, State trunkline or Federal aid roads" *held*, not in contravention of provision of State Constitution that "the credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private," or the due process or equal protection clauses of the Constitution of the United States, in view of the deprivation of local taxing units of the right to levy property tax on motor vehicles and collection by the State of privilege taxes for use of highways on gasoline and motor vehicles and, incident to the taking over by the State of the construction and maintenance of portions of the highway system, relief is afforded to all townships like situated (U. S. Const. am. 14; Mich. Const. 1908, art. 10, § 12; 1 Comp. Laws 1929, § 3594, as amended by Acts Nos. 81, 107, Pub. Acts 1933; § 4651 as amended).

5. SAME—DUE PROCESS—EQUAL PROTECTION—PAYMENT OF HIGHWAY BONDS AND COSTS BY STATE.

Under statutory plan, State-wide in its application, whereby from State highway funds provision was made for payment of gen-

eral highway township bonds for roads, already built by townships, which became county, State trunkline or Federal aid roads, and for payment of cost of construction of roads elsewhere, there was neither a denial of due process or equal protection as provided by the Constitution of the United States (U. S. Const. am. 14; 1 Comp. Laws 1929, § 3594, as amended by Acts Nos. 81, 107, Pub. Acts 1933; § 4651 as amended).

6. HIGHWAYS AND STREETS—PRIVILEGE TAXES—STATE HIGHWAY FUND.

Privilege taxes, consisting of gasoline and motor vehicle weight taxes, imposed incident to the construction and maintenance of highways, do not become a part of the State's general funds but from the outset constitute State highway funds (1 Comp. Laws 1929, §§ 3594, 4651, as amended).

7. STATUTES—CONSTRUCTION.

Strict construction of provisions of statutes for distribution of tax funds will not be sanctioned where it would serve no good purpose and would lead to strange and unwarranted results which the legislature seems not to have intended and allowance must be made for attempted brevity of expression.

8. SAME—MODIFICATION OF MEANING OF WORDS USED.

Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence either by giving an unusual meaning to particular words, altering their collocation, rejecting them altogether or by interpolating other words, under the influence of an irresistible conviction that the modifications thus made are mere corrections of careless language and really give the true intention.

9. SAME—PURPOSE OF CONSTRUCTION.

In construing a statute the object is to ascertain the legislative intent.

10. TAXATION—CONSTRUCTION OF STATUTE—LEVY AND COLLECTION OF TAX.

In statute providing a new source for payment of general highway township bonds which obviated necessity of levying property tax for their payment, to the end that idle and expensive ceremony of levy and collection of property tax be avoided,

interpolation of italicized words is made so as to cause statute to read "moneys remaining  *  *  *  shall be used to reduce the tax *which otherwise would be* levied for general highway township bonds" (Act No. 107, § 19a, Pub. Acts 1933).

11. MANDAMUS—GENERAL HIGHWAY TOWNSHIP BONDS—CONSTRUCTION OF STATUTES—LEVY AND COLLECTION OF PROPERTY TAX.

Township *held,* entitled to mandamus to compel county to allocate funds for payment of general highway township bonds which had been issued for construction of roads that later became county, State trunkline or Federal aid roads, were the only such bonds issued in the county and the county had funds in its possession for such purpose, notwithstanding township had not levied a tax for such purpose although statute provides that such moneys should "be used to reduce the tax levied for general highway township bonds," where such provision is contained in a statute providing for a new source of revenue for payment of such bonds and obviates necessity of levy and collection of tax on property in township (Act No. 107, Pub. Acts 1933).

Appeal from Gratiot; Searl (Kelly S.), J. Submitted October 18, 1938. (Calendar No. 39,874.) Decided February 2, 1939.

Petition by Township of Elba, a municipal corporation, and its township board against County of Gratiot, a municipal corporation, chairman of its board of supervisors, county road commission, treasurer and others for writ of mandamus requiring defendants to allocate weight and gasoline tax moneys. Writ denied. Plaintiffs review by appeal in nature of certiorari. Reversed and judgment ordered entered for petitioners.

*O. G. Tuttle* and *Anderson, Wilcox, Lacy & Lawson (Clarence J. Huddleston,* of counsel), for plaintiffs.

*Charles H. Goggin* and *Robert L. Arnold,* for defendants.

NORTH, J. Petitioners in the circuit court of Gratiot county by suit started in January, 1936, sought a peremptory writ of mandamus requiring the respondents and appellees to allocate, apportion and pay, from moneys received by the county of Gratiot pursuant to the provisions of Acts Nos. 7 and 8, Pub. Acts 1934 (1st Ex. Sess.), and Acts Nos. 81 and 107, Pub. Acts 1933, $10,680 for the retirement of good roads bonds of Elba township.

The trial court denied the relief sought, holding Acts Nos. 7 and 8, Pub. Acts 1934 (1st Ex. Sess.), were unconstitutional because the governor had not, in his call for that extra session nor in his message, submitted the subject-matter of these acts as required by Constitution (1908), art. 5, § 22; but finally basing decision on the fact that the petitioner, Elba township, could not compel payment to it until it had actually levied the tax for the payment of the bonds in question.

At the time of filing the petition herein there was past due and unpaid $10,680 of principal and interest of good roads bonds issued by the township of Elba for the construction of roads within that township, which roads subsequently became county, State trunk line, or Federal aid roads. It appears from the record that the defendant county has in its possession highway funds received from the State treasurer out of which the apportionment sought by petitioners can be made in the event they establish their right thereto.

We quote the following from the opinion of the trial judge:

"In this case we are concerned only, at the outset, with the provisions of Acts Nos. 7 and 8, mentioned above. Act No. 7 contains provisions dealing with the distribution and allocation of the weight tax;

while Act No. 8 contains provisions for distribution and allocation of the gasoline tax. In each of these acts, after other recitals as to distribution of these moneys, appears the following:

" ' (3) Moneys remaining after the application of a county's share to any of the above and foregoing purposes, shall be used to reduce the tax levied for general highway township bonds, as township roads for which said bonds were issued, become county, State trunk line or Federal aid roads, or to reduce the tax levied for general highway township bonds where such bonds were issued for roads that are now county, State trunk line or Federal aid roads; allocation of money available for this purpose as between townships, to rest within the discretion of the board of county road commissioners, subject to the approval of the board of supervisors.'

"On the trial it was conceded that the roads in the township of Elba for which the bonds in question were issued are of a class which bring them under these statutes; and it was conceded also that Elba township is the only township in Gratiot county having any such outstanding bonds. It follows, therefore, that the last clause, in these statutes, relative to discretion of the official boards has no application to the case at bar. If these statutes are valid and the township of Elba has taken the proper steps to bring itself under them, it is entitled to the relief prayed for in the petition filed in this cause.  *  *  *
. "The proofs show, and no question as to that is raised, that the county of Gratiot has funds on hand which came from the gasoline tax to an amount greater than the amount of the Elba township (matured) road bonds, and to which said township would be entitled, providing it is entitled to any relief in the present case."

In passing upon respondents' contention that the mentioned acts are unconstitutional, the trial court further said:

"As to the gasoline tax the governor did not in his call nor in his message make any reference to that subject directly or indirectly.

"As to the weight tax the governor in his message submitted:

" '12. A bill to amend the weight tax applicable to motor vehicles except motorcycles and commercial vehicles from the present rate of 55 cents per 100 pounds of weight to 35 cents per 100 pounds of weight.' ''

The recitals of the circuit judge above quoted are fully sustained by the record. Neither in the call for the 1934 session nor in his message to that legislature did the governor refer in any way to a change in the so-called gasoline tax law, and the extent of his suggestion as to a change in the weight tax law was that such tax should be reduced from the then prevailing rate of 55 cents per 100 pounds to 35 cents per 100 pounds. The bill to which reference is made in the quoted portion of the governor's message does not appear in this record. We are not advised as to its contents. The 1934, first extra session of the legislature, when convened, passed Act No. 7 and thereby amended sections 7 and 34 of the weight tax law. The material change made in section 7 was the reduction of the weight tax on specified vehicles from 55 cents per 100 pounds to 35 cents per 100 pounds. The amendment to this section was in full accord with the governor's special message. But the legislature also amended section 34, by entirely changing the method of distribution of the weight tax and also entirely changing the specific purposes for which designated portions of this tax should be used. Further, as noted above, at this extra session the legislature also passed Act No. 8, thereby amending the gasoline tax act. The pertinent provision of the Constitution reads:

"No bill shall be passed at a special session of the legislature on any other subject than those expressly stated in the governor's proclamation or submitted by special message." Const. 1908, art. 5, § 22.

Appellants contend that section 34 of Act No. 7 and Act No. 8 should be held valid on the theory that this legislation is germane to that specifically called for in the quoted portion of the governor's special message. *Commonwealth, ex rel. Schnader,* v. *Liveright,* 308 Pa. 35 (161 Atl. 697).

In passing it may be noted that decision herein will not materially affect the present statutory law governing either the weight tax or the gasoline tax, because the noted provisions enacted by the extra session of 1934 were reenacted in 1937. See Act No. 340, § 19, subd. (d), par. (3), Pub. Acts 1937, and Act No. 320, § 34, subd. (3), Pub. Acts 1937. In our view this appeal can be decided under the assumption, without so holding, that Act No. 7, § 34, Pub. Acts 1934 (1st Ex. Sess.), which is an amendment to the so-called weight tax, and Act No. 8 of the same session are unconstitutional on the ground that the newly-enacted provisions therein contained are not within or germane to the governor's call or his special message. By their petition, as amended in the circuit court, petitioners also assert their right to relief under Acts Nos. 81 and 107, Pub. Acts 1933, in event Acts Nos. 7 and 8, Pub. Acts 1934 (1st Ex. Sess.), are held unconstitutional. Each of these 1933 gasoline tax acts contains the same so-called "relief provision" as to township highway bonds as that embodied in Acts Nos. 7 and 8, Pub. Acts 1934 (1st Ex. Sess.). We quote the provision from Act No. 81, § 19a, subd. (3), Pub. Acts 1933:

"Moneys remaining after the application of a county's share to any of the above and foregoing purposes, shall be used to reduce the tax levied for general highway township bonds, as township roads for which said bonds were issued, become county, State trunk line or Federal aid roads, or to reduce

the tax levied for general highway township bonds where such bonds were issued for roads that are now county, State trunk line or Federal aid roads; allocation of money available for this purpose as between townships, to rest within the discretion of the board of county road commissioners, subject to the approval of the board of supervisors."

Because of the provision above quoted and the like provision in Act No. 107, Pub. Acts 1933, it seems clear that if the petitioning township has qualified itself as a recipient under the quoted relief provision, a question hereinafter considered, it would be entitled to the relief sought notwithstanding Acts Nos. 7 and 8, Pub. Acts 1934 (1st Ex. Sess.), are unconstitutional for the reason hereinbefore noted; unless, as appellees assert, the relief provisions in all of these acts are unconstitutional for reasons about to be considered.

Appellees contend that all of these "relief provisions" are unconstitutional for the following reasons:

1. They violate article 10, § 12 of the Constitution of this State which forbids improper use of the State credit or public money. The provision reads:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

2. They violate the Fourteenth Amendment to the Federal Constitution wherein are the provisions for due process and equal protection of the laws.

Appellees state in their brief:

"The real decisive point in this litigation involves the validity and constitutionality of the payment and retirement of a purely local township debt from funds collected from the State at large through gen-

eral privilege and/or franchise taxes. This is an important public question."

A comprehensive consideration of all the circumstances out of which these statutory provisions have arisen and the purpose sought to be accomplished by the legislature leads convincingly to the conclusion that the statutory provisions, *i. e.,* the so-called "relief provisions," are not subject to the constitutional objections here urged by appellees.

Notwithstanding these township bonds in their inception constituted obligations of the township only, still in determining whether the legislature had power subsequently to provide that funds derived from privilege taxes might be allocated to the payment of such bonds, the following facts are pertinent. At the time Elba township expended the bond money on its roads, the construction of such roads was a duty and a burden imposed by law upon the township. Subsequently, by appropriate legislation, the State took full control of the construction and maintenance of these and other township highways. The money to meet highway expenses is not derived from a property tax, but instead solely from privilege taxes—the gasoline tax and the weight tax. No one pays these taxes, except those who desire to operate motor vehicles on the State's highways. The privilege or license so to operate such vehicles is State-wide. The construction and maintenance of these highways is now a State undertaking, the State acting in part through its subordinate governmental units. Incident to enacting the laws providing for these privilege taxes the State has deprived local governmental units of the right to levy a property tax on motor vehicles. See 1 Comp. Laws 1929, § 4638 and Act No. 133, § 7, Pub. Acts 1937. The legislature provided that the money received from the secretary of

State from the collection of these privilege taxes
"shall be deposited in the State treasury to the credit
of the State highway fund, and shall be used for lay-
ing out, building, widening, improving and maintain-
ing the public highways and bridges of the State in
accordance with law, and subject to the appropria-
tions herein made." See 1 Comp. Laws 1929, § 4651,
and amendments.

Without going into further details of the evolution
of our highway construction and maintenance laws
and the concomitant enactment of provisions impos-
ing privilege taxes with which to finance the new plan
of highway construction and control, it is sufficient
to note that the State took over the township roads
in the condition in which it found the townships in
that particular and provided a source of income from
which to meet the accompanying financial burden.
The State did not assume any township obligations,
it did not lend its credit to any township. Instead,
incident to the new scheme of our highway laws a
source of income from privilege taxes was developed.
The moneys derived therefrom were earmarked as
"State highway funds," and provision was made for
distributing highway moneys among the counties of
the State to be used in the manner provided by law.
This same law provided in effect that to the extent
a township had matured bonded indebtedness result-
ing from the construction of highways taken over by
the State, the county wherein the township was lo-
cated would reimburse the township out of high-
way funds in the possession of the county providing
there was a balance of such funds which could law-
fully be used for that purpose. This was merely a
part of a general plan whereby the State took over
the highways. It was provided that payments of
this character should be made only from the highway
funds created for this very purpose along with others

specified in the statute by which the State highway system was created. This relief provision is State-wide in its application to all townships like situated. The funds used for this purpose are derived from the State at large by the payment of privilege taxes. Under these statutory provisions no funds of the State are unlawfully used nor is the State's credit granted or used in aid of the townships.

This case is not one wherein the legislature has attempted to relieve, by appropriation from the State's general funds, a single municipality or a limited group of municipalities of paying local obligations. Instead, some provision seemed necessary under the new State highway setup for relieving all townships which, like the township petitioner, had become obligated for the payment of bonds the proceeds of which had been expended in the construction or improvement of highways which the State was taking over. Otherwise a glaring injustice would have resulted from the development of the State highway system. Of necessity the State, under the new highway system, in taking over township roads * had to accept the condition as it existed in the various townships. It is a matter of common knowledge that some townships had made little or no advancement in constructing or improving roads. Others, like Elba township, had improved the roads to an extent that necessitated borrowing and bonding for funds with which to pay the cost. When the State took over township roads it assumed all financial responsibility for future construction, improvement and maintenance of these former township highways. In the townships which had done little or nothing, much remained to be done and to be paid for out of the State's highway fund. To adjust this situation

---

* See Act No. 130, Pub. Acts 1931, as amended (Comp. Laws Supp. § 4018–1 *et seq.*, Stat. Ann. § 9.141 *et seq.*).—REPORTER.

somewhat fairly the plan for the State highway system provided highway funds with which to pay the cost of highways to be constructed or improved in the one class of townships, and to relieve the other class of townships from the burden of paying for roads already constructed and improved. Such a plan, State-wide in its application, cannot be said to be unjust or infected with favoritism to the extent that there is denial of due process or equal protection of the laws within the meaning of the Fourteenth Amendment to the Federal Constitution.

While somewhat different statutory provisions and also somewhat different constitutional provisions are involved, the conclusions above reached are in accord with the following cases:

*Mitchell* v. *Lowden,* 288 Ill. 327 (123 N. E. 566). In this case the court had before it an act of the legislature concerning perfecting a State-wide highway system of improved roads and "the provision of means for the payment of the cost thereof by an issue of bonds of the State of Illinois." In effect the act provided for using bonds to be issued by the State for the purpose of redeeming or refunding highway bonds previously issued by counties. Article 4, § 20, of the Illinois constitution reads:

"The State shall never pay, assume or become responsible for the debts or liabilities of, or in any manner give, loan or extend its credit to or in aid of any public or other corporation, association or individual."

We quote from the opinion of the supreme court, p. 337:

"The objection is made that this section is an assumption of debts of the counties whose roads are so used (as a part of the State road system) and discharges their inhabitants from their proportionate share of the State taxes, and so violates section 20 of

article 4 and section 6 of article 9 of the Constitution. Section 10 merely provides for the payment by the State of the cost of a road of which it takes control as a part of the State-wide system. The State assumes no debt but pays in cash for what it purchases, and the county may use the money to construct or improve its other roads, or, at its option, in the payment of its bonds issued to improve its State-aid roads. The taxes of the inhabitants of the county for the construction of a State-wide system of roads will not be affected in any way. The county will merely be paid for the cost it has paid for the road taken (over into the State-wide system.)''

In the above case, under the quoted constitutional provision, which in effect is strikingly like that of Michigan, the court held that a statutory provision whereby the proceeds of State bonds to be issued might be used by a county ''in the payment of its bonds'' was valid.

*Baker* v. *Hickman County,* 164 Tenn. 294 (47 S. W. [2d] 1090). In considering legislative enactments similar in character to those before us in the present case, the supreme court of Tennessee said, p. 304:

''The three statutes (citing them) evidence a single legislative purpose: to relieve the several counties of the burdens incurred and assumed by them in the construction of a State highway system and to make those burdens a charge upon the highway funds of the State at large. The questions raised by the court, whether this is a State purpose for which State revenues may be appropriated, and whether such appropriation is a giving or lending of the State's credit in violation of the constitution, art. 2, § 31, should be considered. * * *

''We think we may judicially infer that the primary purpose of the general assembly in this legislation was to provide a means for the retirement

of the indebtedness of the counties incurred in the construction of the highway system. The gasoline tax was currently accepted as an economically sound scheme for imposing the cost of the highways on those who use them, in proportion to the use made of them. To authorize each county for itself to impose such a tax would multiply the difficulties and expense of collection. In this situation the general assembly fixed the State tax on the sale and storage of gasoline at a sum believed sufficiently large to permit the prescribed distribution among the counties. It is the duty of the general assembly to levy, or authorize the counties to levy, a sufficient tax to meet the legal obligations of the counties, as well as their current expenses, and to the extent that the money to be paid to the counties is to be applied by them as directed in section 8 [chap. 23] of the Acts of 1927, (requiring counties to use moneys received by them in payment of their outstanding highway bonds) the scheme adopted meets this legislative obligation, freeing other sources of county revenue for taxation for strictly county purposes.

"The expenditures for which the counties are to be reimbursed were for a purpose in which the counties and the State had a common interest, and for which the State might have assumed the entire expense in the first instance. All of the roads, whether constructed by the counties or by the State, have been taken under the exclusive control of the State, to be maintained by State officers at State expense. In such circumstances, the changed legislative opinion being that the public welfare would be best served by making the entire cost of the highway system a charge on the proceeds of a State tax, available for highway purposes, instead of dividing a portion of it among the counties, we think the appropriation of State revenue for such purpose is an appropriation for a State purpose, for which the power of State taxation may be constitutionally exercised."

The Tennessee constitutional provision to which the court referred in the above quotation reads:

"The credit of this State shall not be hereafter loaned or given to or in aid of any person, association, company, corporation or municipality." Const. art. 2, § 31.

*Williams* v. *Parnell,* 185 Ark. 1105 (51 S. W. [2d] 863). The purport of the court's decision is indicated by the following syllabus from the South Western Reporter:

"Statute authorizing State's issuance of State revenue bonds for refunding road improvement district bonds held not to violate constitutional provision prohibiting State from lending its credit."

The constitutional provision to which reference is made, so far as pertinent (article 16, § 1), reads:

"Neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever."

*Amos* v. *Mathews,* 99 Fla. 1 (126 South. 308, 331); and *Carlton* v. *Mathews,* 103 Fla. 301 (137 South. 815). These cases, cited and to some extent relied upon by appellees, are somewhat in the same field of law as the instant case; but almost *in toto* the questions therein decided are entirely different from those now under consideration. Each of them sustains statutes imposing a gasoline tax and approves purposes for which the tax is required to be used. However, it should be noted that in the case of *Amos* v. *Mathews* the court as indicated by the syllabus said:

"While the original construction of roads and bridges may constitute a dual purpose to be accomplished by either State or appropriate local taxa-

tion, or both, it does not follow that after such roads have been constructed and completed as local projects and bonds have been issued as local bonds to pay the cost thereof, that the payment of such bonds can similarly constitute a dual purpose justifying the imposition of State taxes to pay such local obligations. ·Sections 2 and 6 of article 9 of the Constitution intervene to prohibit the payment of such bonds with State funds."

Section 2 of the constitution to which reference is made is wholly foreign to the questions in the instant case; and section 6 reads:

"The legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, or for the purpose of redeeming or refunding bonds already issued, at a lower rate of interest."

But notwithstanding the court's statement as indicated by the above quoted syllabus, the gasoline tax law was sustained on a theory disclosed by the following quoted paragraph of the syllabus.

"The second and third gasoline taxes levied by Chapter 14575, Acts of 1929, are levied for county purposes, *and are therefore to be regarded as county taxes,* in the absence of superior contravening indicia. *The revenue therefrom becomes county funds.*"

As pertinent to the matter we are now considering it may be noted that in one of the opinions in the *Amos Case,* p. 93, it is said:

"The matter of levying a license tax is an inherent legislative power and being inherent in the legislature it necessarily follows that it may be levied for a county purpose or a State purpose. It may be levied and collected by the State and distributed

among the counties as the legislature may deem advisable or the State may levy it for State purposes and authorize the counties to levy it for county purposes.''

In the *Carlton Case* the opinion states:

''The burden of the appellee's contention is, that the act undertakes to appropriate, and disburse this State tax, to the payment of county and road and bridge district bonds; and that, in so doing, it violates the following provisions of article 9 of the Constitution of Florida, to-wit: (quoting sections 2 and 6). * * *

''We are of the opinion that the provisions of chapter 15659, Laws of Florida, (House Bill 65X) Acts of 1931, providing for the levy of the second gasoline tax, and appropriating the moneys realized therefrom, to the paying and reimbursing of counties and/or special road and bridge, or other taxing districts, for moneys by them expended upon, and advanced in the construction of roads, which, at the time of the passage of the act, had been or were taken over and designated as State roads, are not violative of either article 9, §§ 2, 3, 4 or 6, of the Constitution of Florida.''

*Road District No. 4, Shelby County, Texas* v. *Allred,* 123 Tex. 77 (68 S. W. [2d] 164). This case, also noted in appellees' brief, is of little, if any, help on the question we now have under consideration because decision therein was based upon the court's finding that the moneys for which the local governmental unit sought to be reimbursed were not used and could not be used for highway purposes. A paragraph of the syllabus reads:

''Although the building of State highways is a governmental function for which State funds may be appropriated to aid counties and road districts

in paying their outstanding indebtedness, the proceeds of which were used in building State highways, an appropriation or grant of State money to assist a road district in paying its bonds cannot be held valid when none of the proceeds were ever used, or could be used, because already dissipated, for such governmental purpose.''

*Berry* v. *Fox,* 114 W. Va. 513 (172 S. E. 896). Seemingly appellees rely most strongly upon this case. The West Virginia court was therein considering as the controlling issue whether there was justification for ''the *State's assuming* the bonded indebtedness of various units of the State for roads *and schools.*'' The court said:

''At least to the extent of the appropriations sought to be made by the act, the legislature is proposing to have the State assume or become responsible for the debts of local units.''

The appropriation of moneys sought to be made for these purposes was from the ''general revenue fund'' of the State. At least in part these funds were derived from income taxes, and in part seemingly from corporation privilege and franchise fees. But in the case before us the funds are derived solely from privilege taxes imposed incident to the construction and maintenance of highways. These funds do not become a part of the State's general funds, but instead under our statute from the outset they constitute State highway funds. And further, in our legislative acts no attempt is made to have the State assume or become responsible for the payment of township bonds from general State funds. It should be also noted in the West Virginia case it is pointed out that, notwithstanding the State's general revenue funds in part came from income

taxation spread over the State at large, those asserting invalidity of the West Virginia statutory provision lived in a district which could not possibly receive any benefit from the moneys sought to be appropriated, at least the moneys appropriated for school purposes. But under the Michigan statutory provisions every township in the State may and probably will participate in the benefits incident to the expenditure of the privilege tax moneys; some by relief from taxation otherwise necessary to pay outstanding township highway bonds for roads already constructed; and others, perhaps all others, by having highways constructed or improved in their townships. The applicability of the reasoning and the result of the West Virginia case to the instant case is further rendered doubtful by the fact that in West Virginia part of the tax was allocated to certain local school districts. In discussing this phase of the case the following appears in the prevailing opinion, p. 525:

"These debts (for the construction of schoolhouses) made possible the construction of valuable improvements for the special benefit of the respective communities themselves. In reason and fairness, the communities which incurred the debts should pay them. No other community had any voice in contracting the debts and should not therefore be required to help pay them."

While three of the justices of the West Virginia court were of the opinion that the legislation assailed was unconstitutional, two members of the court voiced opposite convictions in a forceful dissenting opinion. In justification of payment of road bonds of local units out of the "general revenue"

funds of the State it is said in the dissenting opinion, p. 540:

"The majority opinion observes: 'It would be no more unfair to require a man's neighbors to help pay his debts than to require numerous communities to help pay the debts of a particular one.' Whatever application that observation may have to school indebtedness it does not apply to the roads situation. The communities which have constructed roads from the proceeds of bonds did so, unaided by other communities. Yet, under the scheme for having a State system of roads, taxes (gasoline, etc.) are collected from the bonded and the unbonded communities alike, and applied to the construction of roads in the unbonded communities. Thus the bonded communities (after having built their own roads unassisted) are helping build the roads in the unbonded communities. It was said in argument that the scheme profited the bonded communities because the State now maintained their roads. Maintenance alone does not place the bonded units on a par with the unbonded ones, as the latter get both construction and maintenance from the State while the former get only maintenance. The scheme is badly out of balance. Since the bonded units help in constructing the roads of the unbonded units, uniformity of treatment demands that the help be returned. This can be done— as the legislature proposes—by having the State assume the road bonds. The taxpayers in one county can and do under modern methods of transportation use the roads of other counties. So there are equities which countenance payment by the State as a whole for the construction of roads which all the citizens of the State may and do enjoy. Those equities should facilitate liberal construction (of the West Virginia Constitution)."

In view of the conclusion justified by the adjudicated cases, as well as on the basis of reasons first

above noted, we hold that the so-called "relief provisions" of the statutes under consideration are not unconstitutional.

It is conceded that no tax has been levied by Elba township to raise the amount it now seeks to obtain to apply on its outstanding matured road bonds. The ground upon which the trial judge planted decision in which he denied the relief sought is stated in his opinion as follows:

"According to the express terms of the statute which, as we have seen, has been held mandatory, these moneys can be used only 'to reduce the tax levied.' No such tax has been levied (by the township petitioner) and it follows, therefore, that even though the 1933 statute should be eventually held valid, the township of Elba cannot compel a refund to it until it actually levies the tax for the payment of these bonds upon the tax roll."

While such a construction would seem to result if the words of the statute were followed to the exact letter, still we think so strict a reading should not be sanctioned when, as in the instant case, it would serve no good purpose, but instead would obviously lead to strange and unwarranted results which it quite conclusively seems the legislature could not have intended. Such results would have been wholly obviated if the phraseology of the statute had been determined with more care, and if by only the slight change made by the words inclosed in parentheses it had been made to read: "Moneys remaining * * * shall be used to reduce the tax (which otherwise would be) levied for general highway township bonds." Except such result is inescapable, why should this statutory provision be construed as a mandate from the legislature that public officers

should indulge in the idle and somewhat expensive ceremony of *levying* a tax that was not to be collected, since in the same statute the legislature was providing another source of funds for paying the very same obligation for which the tax was to be levied? The construction adopted in the circuit court is unduly strict. In part it would seem to defeat the very purpose of the statute, which fairly construed obviates the levying of the tax as well as its collection. And further it seems plain that a more liberal construction which avoids the necessity of even levying the tax upon every item of taxable property in the township will save many complications in tax proceedings—tax sales, notices to redeem, et cetera. In ascertaining the true intent and meaning of a statute often allowance must be made for attempted brevity of expression.

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction * * * that the modifications thus made are mere corrections of careless language, and really give the true intention." Endlich on Interpretation of Statutes, p. 399, § 295.

The above is quoted with approval in *Attorney General* v. *Railway,* 210 Mich. 227, 254. See, also, *Smith* v. *City Commission of Grand Rapids,* 281

Mich. 235, 241. Always the object is to ascertain the legislative intent. *Miles, ex rel. Kamferbeek,* v. *Fortney,* 223 Mich. 552; *Gwitt* v. *Foss,* 230 Mich. 8; *People* v. *Gould,* 237 Mich. 156. Construing the statutes under consideration in accordance with the reasonable and liberal rules of construction announced in the above cited cases, it follows that it was not necessary for the township to *levy* the tax as a condition of securing funds under the "relief provisions."

Other questions presented in the briefs would not alter the result and we pass them without discussion. We are constrained to hold that denial of the relief sought by petitioners was error. The judgment entered in the circuit court is vacated, and the case remanded for entry of judgment in accordance herewith. The petitioners should have costs of both courts.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.