PEOPLE v. LABBE.

1. INDICTMENT AND INFORMATION — SUFFICIENCY — INTOXICATING LIQUORS—CRIMINAL LAW.

An information charging defendant with a violation of section 4 of Act No. 381, Pub. Acts 1913 (2 Comp. Laws 1915, § 7121), in keeping and storing intoxicating liquors in "a garage, other than and not being the private residence" of said defendant, was sufficient; it not being necessary to specify whether the place was one of public resort or not, since it was not a private residence.

2. STATUTES—CONSTRUCTION—CONFERRING PRIVILEGE.

While a statute directed to protecting an absolute right of person or property from criminal attack or invasion may sometimes justify resort to technical definitions and strained construction beyond its popular meaning to compass its manifest purpose, statutes which merely confer a privilege are to be construed, as far as possible, according to their common meaning, so as not to invite public mischief or authorize the individual to overreach the conferred privilege.

3. SAME—PRIVILEGE.

The provision in section 4 of Act No. 381, Pub. Acts 1913, excepting a private residence from the inhibition of the statute, merely extends a privilege to the owner. OSTRANDER, C. J., dissenting.

4. SAME—PRIVATE RESIDENCE—CONSTRUCTION.

The words "private residence," as used in said section 4, construed, and held, not to have the technical meaning of "dwelling house," as applied under the common law to cases of burglary, etc.

5. INTOXICATING LIQUORS — LOCAL-OPTION LAW — CONSTRUCTION— PRIVATE RESIDENCE—GARAGE.

In a prosecution for the violation of section 4 of Act No. 381, Pub. Acts 1913, in keeping and storing intoxicating liquors in a garage located on an alley at the rear of defendant's lot upon which his dwelling house stood, distant some 40 feet from it, and in no way connected with it, said garage held, not to be included in the "private resi-

202—Mich.—33.

dence" of defendant, as used in said section 4 exempting a private residence from the inhibition of the statute.

Exceptions before judgment from Wexford; Lamb, J. Submitted June 14, 1918. (Docket No. 105.) Decided July 18, 1918.

Harold Labbe was convicted of violating the local-option law. Affirmed.

*Gaffney, Miltner & Millington,* for appellant.

*A. W. Penny,* Assistant Prosecuting Attorney, for the people.

STEERE, J. Defendant was prosecuted and convicted in the circuit court of Wexford county of violating section 4 of the so-called Pray law (Act No. 381, Pub. Acts 1913, 2 Comp. Laws 1915, § 7118 *et seq.*), by keeping intoxicating liquors stored in his garage, and brings this case for review upon exceptions before sentence attacking the legality of his conviction on the following grounds:

*First.* The information fails to state that the building in which he is charged with having kept intoxicating liquors was *not* used as a place of public resort.

*Second.* That said garage is a part of his private residence within the meaning of that term as used in the section of the act under which he was convicted.

The facts are not in dispute, and as stated in the brief of defendant's counsel stand stipulated as follows:

"It appears that on the 6th day of July, 1917, the local-option law was in force in the county of Wexford; that the defendant was not then and there a druggist or registered pharmacist; that he did not then and there keep, store and possess liquor for medicinal, mechanical, scientific or sacramental purposes, not in the process of transportation, nor as a common carrier; that the liquor, consisting of 120 pints of beer, was kept, stored and possessed by de-

fendant in his garage, situated and being on the alley at the rear end of the lot upon which his dwelling house is located about 40 feet distant from the dwelling house property and not connected in any way therewith; that there was no cellar under the house, nor store-room; that the liquor so kept, stored and possessed by the defendant was for his own private use, and that the offense charged in the information, if an offense, is admitted to be a second offense against the local-option law."

Upon defendant's arraignment a motion was interposed in his behalf to quash the information on the ground "that it does not allege that the defendant kept, stored or possessed the liquor mentioned in the information in a place which was a place of public resort." This motion was denied. Upon the trial both sides asked for a directed verdict upon the conceded facts. After argument of counsel and discussion of the meaning of the term "private residence" in the connection used, the court said to the jury:

"I charge you, gentlemen of the jury, that it would be a violation of the law, under the conceded facts, and it is your duty to find the respondent guilty as charged."

Following some further discussion of the question the court directed that the jury retire to the jury room, saying in conclusion:

"Now, in order that there may be no mistake, I want you all to understand that the direction of the court is that it is your duty to find this respondent guilty as charged. I leave it to you to bring in your verdict, and will take care of it afterward. I don't want you to misunderstand what I say but I am leaving it to you to say whether under this stipulation as to the facts and the law as I look at it and declare it to you, respondent is guilty or not."

After being absent for a time the jury returned into court in charge of the sheriff and rendered a verdict of guilty as charged.

A motion was thereafter made for a new trial and the questions now presented were saved for review by proper objections and exceptions.

The act under which the prosecution was brought is entitled, so far as material:

"An act to regulate the sale, * * * purchase, acceptance, receipt and possession by any person, * * * of any vinous, malt, brewed, fermented, spirituous or intoxicating liquor when such person * * * resides in territory where the manufacture and sale of such liquors for beverage purposes is prohibited; to prohibit the same in certain cases; to prescribe the means for the enforcement of the provisions of this act;" etc.

Section 4 provides, so far as material here:

"In any township, municipality or county in this State where the manufacture or sale of any of the liquors mentioned in section 1 is prohibited, it shall be unlawful for any person to keep, store or possess any such liquors in any room, building or structure other than the private residence of such person and which is not used as a place of public resort." * * *

The information charges at length a previous conviction for storing and keeping intoxicating liquor in the basement of a certain building on another street than where defendant resided, and charges as a second offense (so far as pertinent to the question raised as to its sufficiency) that—

"—in a certain building, a garage, other than and not being the private residence of him, said Harold Labbe, in the rear of what is known as 204 Crippen street in said city of Cadillac, did then and there keep, store and possess a certain quantity of malt, brewed, fermented, spirituous intoxicating liquor, to wit," etc.

Under the act a private residence is the only exception to the provision prohibiting the storing and possession of intoxicating liquors in territory where the local-option law is in force, and not even in private

residences if they are used as places of public resort. If this information charged defendant with violating the provisions of section 4 by keeping intoxicating liquors stored in his private residence which was also used as a place of public resort it would be necessary to charge that such private residence was also a place of public resort, but where the charge is storing in a place other than a private residence it makes no difference under the statute whether the place is one of public resort or not, and therefore it is not necessary to specify.

The building where this liquor was stored was located on an alley at the rear of defendant's lot upon which his dwelling house stood, distant some 40 feet from it and in no way connected with it. Conceding it was within what is known as the curtilage, it may be likened to a barn or carriage house used for the shelter of animals and vehicles. So regarding it the vital question presented by the undisputed facts is whether or not the words "private residence" in the connection used and for the purpose used was intended by the legislature to have the technical meaning of "dwelling house" as applied under the common law to cases of burglary, etc., thereby including any other disconnected buildings within the curtilage, or home inclosure.

It is correctly stated in defendant's brief that the expression " 'private residence' is not a familiar and common legal term," but authority is offered to the effect that in its ordinary use and popular sense it signifies the same as "dwelling house" and the two terms are synonymous. From this it is argued that in its technical, legal meaning as applied in criminal cases it includes as part of a dwelling house all appurtenant buildings within the curtilage, in support of which numerous authorities are cited, from which it is argued that the garage in question should be con-

strued to constitute a part of defendant's private residence. From our own jurisdiction counsel cites to that proposition, *People* v. *Taylor*, 2 Mich. 250; *Pond* v. *People*, 8 Mich. 150; *Pitcher* v. *People*, 16 Mich. 142; *Stearns* v. *Vincent*, 50 Mich. 219, and *People* v. *Aplin*, 86 Mich. 393; to which might be added others including *People* v. *Nolan*, 22 Mich. 228; *Curkendall* v. *People*, 36 Mich. 309; *People* v. *Fairchild*, 48 Mich. 31. It may be noted that in these cases the comprehensive and strictly legal meaning of the term contended for is adopted in that class of offenses against the habitation which involve criminal invasion of or an attack upon the home by a stranger imperiling the peace and safety of its occupants, an element of crime which has no relation to and is not involved in the unlawful use of a private residence or its appurtenances by the owner or tenant rightfully in possession of and occupying the dwelling.

It is particularly pointed out that in *Pitcher* v. *People*, *supra*, which involved a charge of burglary, this court held that the common law definition should control since the statutory definition of the crime charged was the same as that of the common law and it must be assumed in the absence of any provision to the contrary that the statute intended no change in the offense. That this technical definition is limited in its application to cases involving the reasons which gave rise to it is made clear in *Stearns* v. *Vincent*, *supra*, by Justice COOLEY, who wrote both cases, as follows:

"In the law of burglary the dwelling house is deemed to include whatever is within the curtilage even if not inclosed with the dwelling if used with it for domestic purposes. *People* v. *Taylor*, 2 Mich. 250; *Pitcher* v. *People*, 16 Mich. 142. This construction of the term is for the peace, repose and safety of families in the night-time and it is made to include all those buildings, the forcible breaking of which for felonious purposes during the hours which peaceable and law-abiding per-

sons give up to rest, would naturally cause alarm, distress and danger."

*Vide,* also *State* v. *Clarke,* 89 Mo. 423, as to the policy of the law in adopting such definition.

A statute directed to protecting an absolute right of person or property from criminal attack or invasion may sometimes justify resort to technical definitions and strained construction beyond its popular meaning to compass its manifest purpose, but statutes which merely confer a privilege are to be so construed, as far as possible, according to their common meaning, as not to invite public mischief or authorize the individual to overreach the conferred privilege. The provision in section 4, excepting a private residence from the inhibition of the statute, merely extends a privilege to the owner. The technical definition of a dwelling house by which defendant seeks to enlarge the provided privilege to include all structures or buildings upon his lot, or within the curtilage, gives to "private residence," or even to "dwelling house," a different meaning from that commonly understood and as it is generally used. Outside the legal profession, the average citizen of recognized education, intelligence and standing would be surprised if not offended on being told his hog house and cow stable, or other structure in his barnyard, were part of his private residence. In many adjudicated cases not involving criminal invasion of the home by a stranger various definitions of a dwelling house in harmony with general understanding and common use are recognized as expressing its meaning in the connection used, such as the house or the building in which a person lives or which is inhabited by man; the house in which one dwells; the house in which one resides—the house of his present abode; a place of habitation; a place of abode; a domicile or mansion; a house in which the occupier and his family usually reside; a house de-

signed to be occupied as a place of abode by night as well as by day, etc. 14 Cyc. p. 1126 *et seq.*

Both dwelling house and private residence are popular terms in general use, with a well defined, ordinary and popular meaning. To this can be added that they sometimes are given, as applied to certain crimes and legal rights, an uncommon and more comprehensive technical, legal meaning also. In statutory construction it is the rule that unless some expression in the statute clearly indicates otherwise, words in general use should be given a common construction according to their generally accepted meaning.

"As a general rule the words of a statute are to be taken in their ordinary and popular sense, unless it plainly appears from the context or otherwise that they were used in a different sense. In the construction of statutes a word which has two significations should ordinarily receive that meaning which is generally given to it in the community; but when this construction would contravene the manifest intention of the legislature, we must depart from this rule and give effect to the intention. * * * The words of a statute are to be read in their ordinary sense unless so construing them will lead to some incongruity or manifest absurdity." 2 Lewis' Sutherland Stat. Con. (2d Ed.) § 390.

The construction placed upon the provision in question by the trial court leads to no hardship, incongruity, or absurdity, and is in harmony with the general rule of construction that all words and parts of a provision should be given a meaning where possible. The legislature avoided the adoption of any well-recognized common law term and applied the prohibition to "any room, building or structure, other than the private residence of such person," etc., indicating that the exception is intended to apply to the single building or structure in which the possessor actually resides. To construe "private residence" as including all

disconnected outbuildings or structures upon a city lot, or within a curtilage, as appurtenances or parts of the distinct building in which the owner or tenant in fact lived and made his domicile would render the distinguishing words "room, building or structure" meaningless. We conclude that the purpose of the statute and policy of the law as well as fair rules of statutory construction indicate an intent to confine the conferred privilege to the distinct building or structure in which the possessor privately resides, occupying it only as his habitation for strictly domestic purposes.

The conviction is affirmed, and the case remanded for such further action as the law provides in harmony with this opinion.

BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred with STEERE, J.

OSTRANDER, C. J. I do not think the statute confers a privilege upon any one, but that it defines a crime. I agree to the conclusion.