MARKMAN, J.
oconcurring). I concur in the majority’s analysis and conclusion that the minority/insanity tolling provision of the Revised Judicature Act, MCL 600.5851(1), does not toll the one-year-back rule of the no-fault automobile insurance act, MCL 500.3145(1).[1]1 write separately to elaborate on the majority’s analysis and to express certain reservations concerning the decision reached in these opinions.
(1) I am concerned that as a consequence of this decision, the protections afforded by the tolling provision may become increasingly illusory. This provision allows minors and insane persons to bring civil actions within one year after their legal disabilities have been removed. However, the one-year-back rule of the no-fault automobile insurance act allows such persons to recover only those losses incurred during the one year before the commencement of the action. In other words, although the tolling provision instructs minors and insane persons that they are entitled to wait until one year after their legal disabilities have been removed to bring their civil actions, if they do wait, they will only be allowed to recover what may be a portion of the total damages incurred.[2]
*74 (2) Further, I am concerned that, although the tolling provision was intended to protect minors and insane persons, as a consequence of this decision, when such persons are injured in an accident in which others are also injured, they are likely to be undercompensated for equivalent medical expenses compared to other persons. If, for example, both an adult and a minor are injured in an automobile accident, the adult will be able to file an action and potentially recover all of his losses, while the minor who chooses to wait until he is 18 years old to file an action, as the tolling provision allows, will be able only to recover those losses that were incurred within the one-year period preceding the action.
(3) I am concerned that as a consequence of this decision, what is arguably the larger purpose of the tolling provision will be undermined. The tolling provision temporarily places the statute of limitations on hold for minors and insane persons. The purpose of tolling generally is to allow protected classes of persons an opportunity to be made whole once their disabilities have been removed. However, if the tolling provision in MCL 600.5851(1) does not also toll the one-year-back rule of MCL 500.3145(1), minors and insane persons will not necessarily be made whole. Rather than being allowed to recover all of the expenses incurred during their periods of tolling, these classes of individuals will be limited to only one year’s worth of compensation. This is a result inconsistent with most other statutory tolling provisions.
(4) Finally, I am concerned that as a consequence of this decision, it will border on legal malpractice for an attorney ever to recommend reliance on the *75 minority/insanity tolling period, for a person acting in such reliance may learn too late that the person whose interests he is protecting in this regard has been deprived of several years’ worth of compensation. In this regard, the tolling provision would seem to be more of a snare than a protection.
In the end, however, despite these concerns, I agree with the majority that the tolling provision of MCL 600.5851(1) does not toll the one-year-back rule of MCL 500.3145(1). I believe that this conclusion is mandated by the plain language of these statutes, and that there is at least an arguable rationale in support of the reasonableness of a statute producing this result. Moreover, I do not believe that I possess the judicial authority to impose what some, including myself, might view as a more “logical,” a more “rational,” or a more “consistent” structure for these statutes.
MCL 600.5851(1) provides, in pertinent part:
[I]f the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. [Emphasis added.]
MCL 500.3145(1) provides, in pertinent part:
[T]he claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. [Emphasis added.]
It is a long-accepted principle of statutory construction that “[s]tatutes which may appear to conflict are to be read together and reconciled, if possible.” People v Bewersdorf, 438 Mich 55, 68; 475 NW2d 231 (1991). Although the two statutes in controversy may appear to *76 be in tension, and while they clearly serve different legislative interests, these statutes nonetheless can be reconciled.
The tolling provision allows a protected person to “bring [an] action although the period of limitations has [otherwise] run” as long as the action is brought within one year after the legal disability of minority or insanity has been removed. At the same time, the one-year-back rule prohibits a person from “recovering] benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.”
Although the tolling provision temporarily delays the operation of the statute of limitations, the one-year-back rule is plainly not a statute of limitations, and therefore is plainly not the subject of tolling. As the lead opinion in Howard v Gen Motors Corp, 427 Mich 358, 385-386; 399 NW2d 10 (1986) (holding that the one-year- and two-year-back rules of the Worker’s Disability Compensation Act are not statutes of limitations), explained:
Simply stated, they are not statutes that limit the period of time in which a claimant may file an action. Rather, they concern the time period for which compensation may be awarded once a determination of rights thereto has been made.
Moreover, the one- and two-year-back rules do not serve the same purposes as do typical statutes of limitations.
The rules do not perform the functions traditionally associated with statutes of limitations because they do not operate to cut off a claim, but merely limit the remedy obtainable. They do not disallow the action or the recovery— a petition may be filed long after an injury and benefits may be awarded in response thereto— they merely limit the award once it has been granted.
*77 The one-year-back rule of the no-fault automobile insurance act is indistinguishable from the one-year- and two-year-back rules of the Worker’s Disability Compensation Act. As do the latter, the former serves by its straightforward language only as a limitation on the recovery of benefits; it does not define a period within which a claimant may file a cause of action. Therefore, the one-year-back rule is not a statute of limitations, and it lies outside the scope of what is affected by the minority/insanity tolling provision.
The tolling provision of MCL 600.5851(1) tolls the limitation that applies to the “bringing of an] action”; however, it does not toll the limitation that applies to the “recover[y of] benefits,” in particular the limitation set forth in MCL 500.3145(1). Accordingly, although a plaintiff may not be prohibited from “bringing] the action,” a plaintiff is prohibited from “recover[ing] benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.”
I agree with the majority that the two statutes compel this conclusion. In the final analysis, this is not a conclusion that reflects the will of this Court, or that of individual justices, but one that reflects the will of the people of Michigan acting through their legislative representatives. The majority’s conclusion is the only one, in my judgment, that accords reasonable meaning to the actual language of the laws, as opposed to the language of the law that might have been enacted but never was. Only if this Court ignores, or contorts, the language of the one-year-back rule can it fairly be encompassed within the language of the tolling provision.[3]
*78 Moreover, unlike Justice Kelly, I do not believe that the result reached by the majority can fairly be characterized as an “absurd result” for which some limited judicial reformation might be appropriate.[4] Unlike some *79 of my colleagues, I believe that the “absurd results” rule is one that complements and reinforces the doctrine of interpretivism. Cf. People v McIntire, 461 Mich 147; 599 NW2d 102 (1999), rev’g People v McIntire, 232 Mich App 71; 591 NW2d 231 (1998); Piccolo v Nix, 466 Mich 861 (2002). As observed by Justice Scalia, “it is a venerable principle that a law will not be interpreted to produce absurd results.” Kmart Corp v Cartier, Inc, 486 US 281, 324 n 2; 108 S Ct 1811; 100 L Ed 2d 313 (1988) (Scalia, J., concurring in part and dissenting in part). The “absurd results” rule underscores that the ultimate purpose of the interpretative process is to accord respect to the judgments of the lawmakers. While it must be presumed that these judgments are almost always those reflected in the words used by the lawmakers, in truly extraordinary cases, exercise of the “judicial power” allows recognition of the fact that no reasonable lawmaker could conceivably have intended a particular result. As Justice Kennedy observed in a concurring opinion in Public Citizen v United States Dep’t of Justice, 491 US 440, 470; 109 S Ct 2558; 105 L Ed 2d 377 (1989), the “absurd results” rule “demon *80 strates a respect for the coequal Legislative Branch, which we assume would not act in an absurd way.”
However, the “absurd results” rule must not be invoked whenever a court is merely in disagreement, however strongly felt, with the policy judgments of the Legislature. This, in my judgment, is essentially what Justice CAVANAGH does here sub silentio and what Justice KELLY does here expressly. Although the Court’s holding in this case maintains a law within our state that is contrary to that which seems to me most rational, and although I have doubts concerning whether individual members of the 71st Legislature genuinely had in mind this law,[5] I do believe that a reasonable lawmaker conceivably could have intended these results.
Such a lawmaker, for example, might have intended these results in order to make no-fault insurance more affordable. See Griffith v State Farm Mut Automobile Ins Co, 472 Mich 521, 539; 697 NW2d 895 (2005) (stating that this Court has always been cognizant of the potential problem of “cost containment for this mandatory coverage” when interpreting the no-fault act), citing Shavers v Attorney General, 402 Mich 554, 599; 267 NW2d 72 (1978) (holding that “[i]n choosing to make no-fault insurance compulsory for all motorists, the Legislature has made the registration and operation of a motor vehicle inexorably dependent on whether no-fault insurance is available at fair and equitable rates”); Jarrad v Integon Nat’l Ins Co, 472 Mich 207, 218; 696 NW2d 621 (2005) (recognizing “the Legislature’s overarching commitment in the no-fault act, and its later amendments, to facilitating reasonable econo *81 mies in the payments of benefits, thus causing the costs of this mandatory auto insurance to be more affordable”); Cruz v State Farm Mut Automobile Ins Co, 466 Mich 588, 597 n 13; 648 NW2d 591 (2002) (recognizing that “[c]oncern about the affordability of no-fault insurance has caused the Legislature over the years to amend the no-fault act in order to reduce the scope of mandatory coverages”); State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 151; 644 NW2d 715 (2002) (recognizing that “the Legislature has, consistent with its ongoing efforts over the years, attempted to make such mandatory insurance affordable”); Marquis v Hartford Accident & Indemnity (After Remand), 444 Mich 638, 654-655; 513 NW2d 799 (1994) (recognizing that “a primary goal of the no-fault act is to ‘provid[e] an equitable and prompt method of redressing injuries in a way which made the mandatory insurance coverage affordable to all motorists’ ”), quoting Tebo v Havlik, 418 Mich 350, 366; 343 NW2d 181 (1984); Celina Mut Ins Co v Lake States Ins Co, 452 Mich 84, 89; 549 NW2d 834 (1996) (holding that “the no-fault insurance system... is designed to provide victims with assured, adequate, and prompt reparations at the lowest cost to both the individuals and the no-fault system”); O’Donnell v State Farm Mut Automobile Ins Co, 404 Mich 524, 547; 273 NW2d 829 (1979) (recognizing that the Legislature has provided for set-offs in the no-fault act: “Because the first-party insurance proposed by the act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible[;] [otherwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance.”).
Conceivably as well, a reasonable lawmaker might have intended to maintain the solvency of insurers, and *82 to enhance their ability to undertake future planning, by protecting them from multimillion dollar lawsuits filed many years after medical expenses have been incurred, and only after relatively manageable month-to-month expenses have been allowed to develop into more extraordinary decade-to-decade expenses. Such a lawmaker might have sought to obligate those who have incurred medical expenses to seek reimbursement on a relatively ongoing basis, rather than allowing them to wait for many years before seeking compensation. Indeed, it is conceivable that a reasonable lawmaker might have wished to incentivize earlier, rather than later, causes of action in order to encourage those who have incurred medical expenses to act in a manner consistent with their own financial self-interest,[6] and to ensure that their medical expenses were reimbursed expeditiously.
Finally, a reasonable lawmaker might have concluded that practical problems pertaining to evidence and proofs in old claims required some balance between the interests of the insured and those of the insurer.
I am inclined to believe that the principal purpose of the minority/insanity tolling provision is to afford minors and insane persons an opportunity to be made litigatively whole once their disabilities have been removed. However, what I discern as the principal purpose of the tolling provision cannot be allowed to trump its actual language. To allow such a result would enable the judge to impose on the law his own characterization of its unstated “purpose” and trump the actual words of *83 the law. Instead, I believe, it must be assumed that these actual words better address the “purpose” of the statute than some broad characterization divined by the judge.[7] The actual language of the tolling provision merely preserves the right to “bring [an] action”; whatever I might suppose to have been in the minds of individual legislators, and whatever I might speculate as the purpose of this law, the law itself says nothing about making the protected person litigatively whole.
Although the general purpose of tolling statutes is to render the beneficiary whole in his cause of action, the precise issue in this case is whether this purpose remains intact where there is, as here, a one-year-back rule— an equally applicable one-year-back rule.[8] The interpretative accommodation reached by the majority gives meaning to both provisions, while the approach of the dissents would give no meaning in the present context to either the one-year-back statute or the “bring the action” language in the tolling statute.
In Geiger v Detroit Automobile Inter-Ins Exch, 114 Mich App 283; 318 NW2d 833 (1982), the Court of Appeals held that the minority/insanity tolling provision does toll the one-year-back rule of the no-fault *84 automobile insurance act. However, the only reason it gave for reaching such a conclusion is that “[a] contrary rule would severely limit the utility of the minority saving provision. ...” Id. at 291. I do not necessarily disagree with Geiger that not tolling the one-year-back rule may well “limit the utility” of the tolling provision, perhaps even “severely,” but that is often what happens when there are statutes that are in tension with one another. It can be argued just as easily that to do the opposite, to toll the one-year-back rule, would be to “severely limit the utility” of the one-year-back rule. Indeed, it can be argued that to toll the one-year-back rule is not merely to “severely limit its utility,” but to do it even greater damage by vitiating its language altogether. In the end, the Geiger rationale is not even a legal rationale at all; rather, it is little more than a statement by the majority in Geiger that it preferred a different statute than the one actually enacted by the Legislature. In this regard, it is no different than the dissents in this case.
This Court lacks the authority to alter a statute simply because it is confident that such alteration will better fulfill some supposed purpose. While I believe that this Court has an obligation to avoid genuinely “absurd results,” a statute that is simply less well-crafted than a judge believes it could have been is not for that reason “absurd.” Something is “absurd” as a matter of law, justifying the extraordinary remedy of judicial reformation, only if it is “utterly or obviously senseless, illogical, or untrue; contrary to all reason or common sense; laughably foolish or false.” Random House Webster’s College Dictionary (1991). Justice Scalia has described results as being “absurd” when they are “unthinkable,” “bizarre,” or “startling.” Green v Bock Laundry Machine Co, 490 US 504, 527; 109 S Ct 1981; 104 L Ed 2d 557 (1989) (Scalia, J., concurring); *85 City of Columbus v Ours Garage & Wrecker Service, Inc, 536 US 424, 450 n 4; 122 S Ct 2226; 153 L Ed 2d 430 (2002) (Scalia, J., dissenting). He has described a statute as “absurd” when it “cannot have been meant literally,” or when it “cannot rationally... mean” what it seems to mean. Green, supra at 528.[9]
Justices CAVANAGH and KELLY, in contrast, effectively define as an “absurd result” one that is merely imperfect or flawed, one that is merely susceptible to improvement. Unencumbered, as this Court is, by the need of the legislative branch to engage in compromise and give-and-take between many competing social interests, Justices CAVANAGH and KELLY invoke an “absurd results” rule simply on the basis that the legislative process has produced what, in their view, is a law that is less “consistent” and less “effective” than it could have been.
As explained above, however, there are a number of reasons why the Legislature might have intended the statute that Geiger derogated. Because the actual language of the minority/insanity tolling provision of the RJA does not toll the one-year-back rule of the no-fault automobile insurance act, and because such a result cannot fairly be said to be “absurd,” I believe that this *86 Court lacks the authority to reform this statute and to construe it in a manner contrary to its language.[10]
In the end, I cannot read the minds of those who enacted the two statutes in question, and I do not profess to understand what may have been secretly harbored in these minds. The most fundamental rule of statutory construction is that the actual words of the statutes are “the best indicator of the Legislature’s intent.” Kreiner v Fischer, 471 Mich 109, 129; 683 NW2d 611 (2004). For the reasons set forth above, the actual words of the two statutes here lead me to agree with the majority that the minority/insanity tolling provision does not toll the one-year-back rule. However, also for the reasons set forth above, I would respectfully urge the present Legislature to review the opinions in this case and to ascertain whether the Court’s holding is consistent with the Legislature’s present intentions.

 For the reasons set forth in this opinion, I do disagree with the majority opinion’s statement that whether legislation is or is not “absurd” is “irrelevant.” Ante at 67.

 The largest portion of medical expenses ordinarily will have been incurred in the immediate aftermath of a covered accident rather than during the year immediately preceding the filing of the tolled cause of action. Indeed, the longer the period of tolling— for example, the younger *74 the child at the time of the covered accident— the smaller the portion of overall medical expenses that will ordinarily have been incurred during the one-year-back period.

 Justice Cavanagh describes me at oral argument as having “aided” defendant in devising an alternative argument. This is a fair character *78 ization of what occurred only if asking a question concerning a matter that neither of the parties had previously given thought can be described as having “aided” a party. While my questioning did, in fact, “aid” this Court in getting the meaning of the law right, it did not apparently “aid” in producing the result desired by the dissenting justices.

 The “absurd results” rule has been described as one that asserts that “[i]t will always ... be presumed that the legislature intended exceptions to its language, which would avoid [absurd consequences].” United States v Kirby, 74 US 482, 486-487; 19 L Ed 278 (1868). The United States Supreme Court has consistently adhered to this rule. As early as 1819, the Court asserted in Sturges v Crowninshield, 17 US 122, 202-203; 4 L Ed 529 (1819), that the absurdity of an interpretation warranted a departure from the plain meaning of the words. See also Kirby, supra; Armstrong Paint & Varnish Works v Nu-Enamel Corp, 305 US 315, 333; 59 S Ct 191; 83 L Ed 195 (1938) (“[T]o construe statutes so as to avoid results glaringly absurd, has long been a judicial function.”). Justice Story has also observed, “Where [the law’s] words are plain, clear, and determinate, they require no interpretation; and [such interpretation] should, therefore, be admitted, if at all, with great caution and only from necessity, either to escape some absurd consequence, or to guard against some fatal evil.” 1 Story, Commentaries on the Constitution of the United States (5th ed), § 405.
In addition, Michigan has always adhered to the “absurd results” rule, at least until its apparent reversal in People v McIntire, 461 Mich 147; 599 NW2d 102 (1999), a case referencing none of our earlier decisions in this regard. As early as Green v Graves, 1 Doug 351, 354 (Mich, 1844), this Court stated, “The reason and intention of the lawgiver will control the strict letter of the law” when the latter would lead to “absurdity.” To name only a few cases, see also Campau v Seeley, 30 Mich 57, 62 (1874); People v Labbe, 202 Mich 513, 520; 168 NW 451 (1918); Attorney General v Detroit UR Co, 210 Mich 227, 254; 177 NW 726 (1920); Grand Rapids v Crocker, 219 Mich 178, 183-184; 189 NW 221 (1922); Cytacki v Buscko, 226 Mich 524, 528; 197 NW 1021 (1924); Lukazewski v Sovereign Camp of the Woodmen of the World, 270 Mich 415, 421; 259 NW 307 (1935); Mondou v Lincoln Mut Cas Co, 283 Mich 353, 358; 278 NW 94 (1938); Elba Twp v Gratiot Co, 287 Mich 372, 394; 283 NW 615 (1939); Wayne Co Bd of Rd Comm’rs v Wayne Co Clerk, 293 Mich 229, 236; 291 NW 879 *79 (1940); Superx Drugs Corp v State Bd of Pharmacy, 378 Mich 430, 457; 146 NW2d 1 (1966) (opinionby O’Hara, J.); Salas v Clements, 399 Mich 103, 109; 247 NW2d 889 (1976); Metro Council No 23 AFSCME v Oakland Co Prosecutor, 409 Mich 299, 325, 327-328; 294 NW2d 578 (1980); Owendale-Gagetown School Dist v State Bd of Ed, 413 Mich 1, 8; 317 NW2d 529 (1982); Achtenberg v East Lansing, 421 Mich 765, 772; 364 NW2d 277 (1985); State Treasurer v Wilson, 423 Mich 138, 145-146; 377 NW2d 770 (1985); Gobler v Auto-Owners Ins Co, 428 Mich 51, 62; 404 NW2d 199 (1987); People v Stoudemire, 429 Mich 262, 267; 414 NW2d 693 (1987); Belanger v Warren Consolidated School Dist, Bd of Ed, 432 Mich 575, 589; 443 NW2d 772 (1989); Bewersdorf, supra at 68. See also the subsequent decision of this Court in Rafferty v Markovitz, 461 Mich 265, 270; 602 NW2d 367 (1999) (“[Statutes must be construed to prevent absurd results ....”). Moreover, I am unaware of any state other than Michigan that lacks an “absurd result” rule as an aspect of its legal system.

 The 71st Legislature enacted the tolling provision, the later-enacted statute of the two statutes at issue here.

 Indeed, it seems certain that the tolling provision will come into play in only a very small portion of all minor/insanity medical expense no-fault cases, and that most claimants will file actions on a timely, “untolled” basis, because whoever has incurred expenses on behalf of a minor or insane person will have an obvious financial interest in being reimbursed for such expenses as expeditiously as possible.

 One of the problems, of course, with a focus on the “purpose” of a statute, as opposed to its actual language, is that the former can he characterized at widely different levels of remove from the statute. If the “purpose” of the tolling statute is not to achieve the ends compelled by its plain words, is the “purpose” instead to toll the period of limitations without regard for other statutes? Is it to place minors and insane persons in an identical position with others who have filed claims for medical expenses immediately upon incurring such expenses? Is it to optimize litigative opportunities for minors and insane persons to file lawsuits? Is it generally to do good things for minors and insane persons?

 I am aware of only one other statutory one-year-back rule. See MCL 418.833(1) (the one-year-back rule of the Worker’s Disability Compensation Act), referred to earlier in this opinion. There is no decision of this Court reconciling this provision and any applicable tolling provision.

 Black’s Law Dictionary (5th ed) defines “absurdity” as “[a]nything which is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of men of ordinary intelligence and discretion.” There are a variety of alternative formulations of the “absurd results” rule. See, e.g., Crooks v Harrelson, 282 US 55, 60; 51 S Ct 49; 75 L Ed 2d 156 (1930) (“so gross as to shock the general moral or common sense”); Sturges, supra at 203 (“so monstrous, that all mankind would, without hesitation, unite in rejecting the application”); Public Citizen, supra at 471 (Kennedy, J., concurring) (“quite impossible that [the Legislature] could have intended the result”); Green, supra at 511 (“can’t mean what it says”); Green, supra at 527 (Scalia, J., concurring) (“an unthinkable disposition”).

 Justice Kelly, who insists on approaching the instant matter from the perspective of one authorized to second-guess the legislative branch, inquires, post at 130 n 61, “What legislator would find it reasonable to reduce the cost of insurance by leaving children and the insane with little or no recovery for their injuries?” (Emphasis added.) As I have made clear in this opinion, I doubt that I would if I were a legislator, and it seems that neither would Justice Kelly, but, of course, we are not legislators. Bather, we are judges. Therefore, the proper inquiry is not that of Justice Kelly but rather, “Is it quite impossible or is it quite unthinkable that a legislator would enact this legislation?” See, e.g., Public Citizen, supra at 471; Green, supra at 511. Justice Kelly, by ignoring virtually every conceivable rationale for MCL 600.5851(1) set forth in this and in the majority opinion, not only transforms the “absurd result” rule beyond all recognition, but through her characterization of this law at its most indefensible, rather than at its most defensible, as she is obligated to do as a judge, demonstrates an inappropriate willingness to substitute her judgment for that of the Legislature. The Legislature is entitled to make dubious policy judgments without myself, or Justice Kelly, being thereby authorized to act as lawmakers-in-chief.